IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00792-KLM

LUX STERLING HOLDINGS, LLC, a Nevada Limited Liability Company,

    Plaintiff,

v.

ANTHONY MANERBINO, an individual,
DAWNA MANERBINO, an individual,
PHILIP WHELAN, an individual, and
CNW, LLC, a Colorado limited liability company,

    Defendants.
_____

ANTHONY MANERBINO, an individual, and
CNW, LLC, a Colorado Limited Liability Company,

    Third-Party Plaintiffs,

v.

PHIL NEUMAN, an individual, and
COLIN C. CONNER II, an individual,

    Third-Party Defendants.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court[1] on Third-Party Defendants Phil Neuman ("Neuman")

---

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See generally* [#36, #38].

and Colin C. Conner II's ("Conner") **Motion to Dismiss Third Party Complaint** [#59][2] (the "Motion"). Third-Party Plaintiffs Anthony Manerbino ("Manerbino") and CNW, LLC ("CNW") filed a Response [#60] in opposition to the Motion. No Reply was filed. The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#59] is **GRANTED in part and DENIED in part**.

## I. Background

Plaintiff initiated this action by filing a Complaint [#2] in the District of Nevada on June 3, 2016. The lawsuit was transferred to this Court on March 29, 2017. *See* [#1]. On June 28, 2017, Plaintiff filed the operative Second Amended Complaint [#31], which includes two remaining claims against Defendants: (1) Fraud-Misrepresentations of Operating Expenses, and (2) Fraud-Misrepresentation of Compliance with MED[3] Regulations. *Second Am. Compl.* [#31] at 13-17; *see also Order* [#49] (dismissing Count III). These claims arise from Plaintiff's allegations that Defendants committed fraud during contract negotiations regarding a joint medical marijuana venture between the parties. *Id.* at 1-2 ¶ 1.

Specifically, Plaintiff alleges that "[i]n reasonable reliance on fraudulent misrepresentations and omissions, [Plaintiff] entered into a joint venture governed by

---

[2] "[#59]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout this Order.

[3] Although the parties do not define "MED Regulations" they appear to be referring to regulations set forth by the Marijuana Enforcement Division ("MED") branch of the Colorado Department of Revenue. *See Trans-High Corp. v. Colorado*, No. 14-CV-00370-MSK, 2014 WL 585367, at *1 (D. Colo. Feb. 14, 2014) (defining "MED").

unenforceable contracts with [D]efendants and incurred damages in excess of $500,000." *Id.* Plaintiff and Defendants entered into the agreement on September 14, 2015. *Id.* at 7 ¶ 22. In short, Plaintiff asserts that it invested in Defendants' medical marijuana business because of Defendants' representations that: (1) the business was in compliance with all MED regulations, including not using pesticides during the marijuana cultivation process; and (2) the business had a monthly operating cost of only $10,500. *Id.* at 3-8. Plaintiff asserts that it learned that both representations were false less than six months after executing the agreement. *Id.* at 8-10.

On April 8, 2018, Defendants filed the Answer and Third-Party Complaint of Defendants Anthony Manerbino, Dawna Manerbino, Philip Whelan and CNW, LLC ("Third-Party Complaint") [#50]. Third-Party Plaintiffs, consisting of only Mr. Manerbino and CNW, assert that, over the course of several months in 2015, they negotiated with Mr. Neuman and Mr. Conner regarding the purchase of CNW. *Third-Party Compl.* [#50] at 27-28 ¶¶ 9-10, 11. Mr. Manerbino and CNW allege that during those negotiations, Mr. Neuman and Mr. Conner made numerous attractive business representations. *Id.* at 27-28 ¶¶ 10-11. Ultimately, the parties agreed that Luxembourg Canna Holdings, LLC ("LuxCanna"), an entity that Mr. Neuman and Mr. Conner would form and control, would operate CNW's marijuana business for two years and then purchase CNW for $1.5M. *Id.* at 27-28 ¶ 11. Based on the representations made during negotiations, Mr. Manerbino and CNW decided to execute the LuxCanna Agreement and a separate Operating Agreement (collectively, the "LuxCanna Documents"). *Id.* at 28 ¶¶ 12-14. Mr. Neuman and Mr. Conner controlled CNW's business operations from the time of the execution of the LuxCanna Documents through March 3, 2016. *Id.* at 27 ¶ 8; *id.* at 29 ¶ 19.

However, Mr. Manerbino and CNW assert that Mr. Neuman and Mr. Conner knowingly made false representations during their business negotiations in order to induce them into executing the LuxCanna Documents. *Id.* at 30 ¶¶ 21-22. Mr. Manerbino and CNW allege that during the time that Mr. Neuman and Mr. Conner controlled the company's operations, CNW incurred substantial losses due to missing and unaccounted for product, damage to vendor, patient, and employee relationships, failure to pay sales taxes, closing of the dispensary for three months, sale of product at less than market value, and damage to and theft of company property. *Id.* at 30 ¶ 24.

Mr. Manerbino and CNW assert two claims against Mr. Neuman and Mr. Conner: (1) fraudulent inducement of contract, and (2) civil theft as defined in Colo. Rev. Stat. § 18–4–401. *Third-Party Compl.* [#50] at 30 ¶¶ 21-24; *id.* at 31 ¶ 31. Mr. Manerbino and CNW seek compensatory damages, treble damages, and attorneys' fees and costs as a result of Mr. Neuman and Mr. Conner's actions. *Id.* at 31-32.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a

complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

**A.  Economic Loss Rule**

Mr. Neuman and Mr. Conner argue that the economic loss rule bars both claims

asserted against them.  *Motion* [#59] at 7.  The economic loss rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Benton v. Avedon Eng'g, Inc.*, No. 10-cv-01899-RBJ-KLM, 2012 WL 5869126, at *7 (D. Colo. Aug. 15, 2012) (citing *Standard Bank, PLC v. Runge, Inc.*, 443 F. App'x 347, 349-50 (10th Cir. 2011)).  However, the extent of Mr. Neuman and Mr. Conner's argument on this point is that "all of the alleged fraudulent misrepresentations consist of promissory breaches or contract obligations under the [LuxCanna Documents]," and that "all of the damages, i.e. operating losses and theft of property, also constitute contract damages arising from [their] alleged breach of express or implied contract obligations."  *Motion* [#59] at 7.  This cursory argument is simply insufficient for the Court to determine whether the economic loss rule applies.  *See U.S. v. Judd*, 42 F. App'x 140, 144 (10th Cir. 2002) (stating that "arguments made in a perfunctory manner . . . are waived") (citations omitted).  For example, Mr. Neuman and Mr. Conner provide no citation to any of the specific contractual provisions allegedly pertinent to the application of the economic loss rule.  They also fail to provide any citation to the Third-Party Complaint to support their argument.  Accordingly, in the absence of additional material detail, the Motion [#59] is **denied** to the extent Mr. Neuman and Mr. Conner seek dismissal of either claim on the basis of the economic loss rule.

**B.     Fraudulent Inducement Claim**

Mr. Manerbino and CNW assert that Mr. Neuman and Mr. Conner knowingly made false representations during the negotiations of the LuxCanna Documents and fraudulently

-6-

induced them into executing the contracts. *Third-Party Compl.* [#50] at 30 ¶¶ 21-24. Mr. Neuman and Mr. Conner argue that Mr. Manerbino and CNW fail to sufficiently allege a fraud claim because Mr. Manerbino and CNW fail to plead fraud with the particularity required by Fed. R. Civ. P. 9(b). *Motion* [#59] at 2.

Under Colorado law,[4] a plaintiff must show the following five elements to establish fraud: "(1) that the defendant made a false representation of material fact; (2) that the [defendant] knew that it was false; (3) that the [plaintiff] was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the [plaintiff's] reliance resulted in damage to the plaintiff." *Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012) (citations omitted).

Because of the "reputational harm that may result from unsupported allegations of fraud," special pleading requirements apply to claims of fraud. *Id.* Therefore, Rule 9(b) requires that fraud allegations must be stated with particularity. *Id.* Pursuant to Rule 9(b), a plaintiff must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *McNees v. Ocwen Loan Servicing, LLC*, No. 16-cv-01055-WJM-KLM, 2018 WL 626598, at *4 (D. Colo. Jan. 31, 2018) (citing *United States ex. rel Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006)). Mr. Neuman and Mr. Conner argue that Mr. Manerbino and CNW failed to plead allegations with the heightened specificity required under Rule 9(b). *Motion* [#59] at 2. Specifically, Mr. Neuman and Mr. Conner argue that

---

[4] Colorado law applies because "in diversity cases, the substantive law of the forum state governs the analysis of the underlying claims." (*Granite Southlands Town Ctr., LLC v. Provost*, 455 F. App'x 72 (10th Cir. 2011) (applying Colorado tort law in analysis of fraudulent inducement claim in diversity suit) (citations omitted).

Mr. Manerbino and CNW failed to satisfy the pleading standard as to the elements of reliance, causation, and injury. *Id.* at 6.

Mr. Neuman and Mr. Conner argue that the Third-Party Complaint is silent as to how Mr. Manerbino and CNW's "reliance on [the] alleged misrepresentations . . . resulted in alleged operating losses or theft of property." *Id.* Instead, "the only damages alleged are unspecified operating losses and theft of property that have nothing to do with [the promises to make substantial investments in CNW or pay Mr. Manerbino a salary for two years]." *Id.* Mr. Neuman and Mr. Conner argue that, "these are precisely the type of unspecified allegations that Rule 9(b) is designed to protect against." *Id.* at 7.

Mr. Manerbino and CNW allege the five elements of fraud in the Third-Party Complaint as follows. Regarding the first element, i.e. whether the defendants made a false representation of material fact, Mr. Manerbino and CNW allege that Mr. Neuman and Mr. Conner made various misrepresentations. *Third-Party Compl.* [#50] at 27 ¶ 10; *id.* 30 ¶ 21. For example, Mr. Neuman and Mr. Conner allegedly misrepresented that they were accomplished and experienced business persons; that their investor group had unlimited resources to expand CNW; that Mr. Manerbino would be paid a salary for two years; that their representatives[5] would apply to hold a permitted economic interest in CNW pending the purchase of CNW; and that Mr. Godbout and Mr. Manerbino would retain 7% and 3%, respectively, of CNW. *Id.*

For the second element of fraud, whether the person making the representation

---

[5] The Third-Party Complaint refers to the "buyer's representatives", but does not explain who they are. The Court assumes that the "buyer's representatives" are Mr. Neuman and Mr. Conner's representatives. *See generally Third-Party Complaint* [#50].

knew it was false, Mr. Manerbino and CNW assert that Mr. Neuman and Mr. Conner knew the representations were false at the time.  *Id.* at 30 ¶¶ 21-22.  Although the allegations as to this second element are admittedly sparse, the element is pled with sufficient specificity considering that such information is under defendant's control.  *McNees v. Ocwen Loan Servicing, LLC*, No. 16-cv-01055-WJM-KLM, 2018 WL 626598, at *5 (D. Colo. Jan. 31, 2018) (citing *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1242 (10th Cir. 2016) (explaining that Rule 9(b)'s "normally rigorous particularity rule has been relaxed somewhere where the factual information is peculiarly within the defendant's knowledge or control")).

As to the third element of fraud, whether the plaintiff was ignorant of the falsity, Mr. Manerbino and CNW allege that they did not know that the representations were false, and would not have executed the LuxCanna Documents otherwise.  *Id.* at 30 ¶ 23.  Regarding the fourth element of fraud, that the representation was made with the intention that it be acted upon, Mr. Manerbino and CNW allege that Mr. Neuman and Mr. Conner made the false representations in order to induce them to execute the contract.  *Id.* at 30 ¶ 22.

As to the fifth element of fraud, that the reliance resulted in damage to the plaintiffs, Mr. Manerbino and CNW allege that during the time Mr. Neuman and Mr. Conner controlled operations at CNW, "the company incurred substantial losses as a result of missing and unaccounted for product, damage to vendor, patient and employee relationships, failure to pay sales taxes, lost revenues from closing the dispensary from January to April 2016, sale of product at less than market value, and damage to and theft of company property."  *Id.* at 30 ¶ 24.

The Court finds that Mr. Manerbino and CNW have failed to sufficiently allege this

fifth element, i.e. how reliance on the misrepresentations resulted in the identified damages. For example, Mr. Manerbino and CNW assert that Mr. Neuman and Mr. Conner falsely represented that they were accomplished business persons with years of experience; that their investor group had unlimited resources, which they would use to significantly expand CNW's business; that Mr. Manerbino would be paid a salary for two years; that their representative would apply to hold a permitted economic interest in CNW; and that Mr. Godbout and Mr. Manerbino would retain 7% and 3%, respectively, of the substantially expanded company. *Id.* at 27 ¶ 10; *id.* 30 ¶ 21. However, Mr. Manerbino and CNW have offered no allegations from which for the Court can infer how reliance on these alleged misrepresentations resulted in "missing and unaccounted for product, damage to vendor, patient and employee relationships, failure to pay sales taxes, lost revenues from closing the dispensary from January to April 2016, sale of product at less than market value, and damage to and theft of property." *Id.* at 30 ¶ 24. Instead, Mr. Manerbino and CNW merely assert that Mr. Neuman and Mr. Conner made misrepresentations to induce them to execute the LuxCanna Documents, and that, as a result, they incurred "significant economic and non-economic damages." *Id.* at 30 ¶ 25. The Court cannot infer from these allegations how Mr. Manerbino and CNW's reliance on the specified alleged misrepresentations caused the asserted injuries.

Therefore, the Court finds that Mr. Manerbino and CNW have failed to state a claim upon which relief may be granted because they do not sufficiently allege how reliance on the misrepresentations resulted in damage, thereby constituting fraud. Accordingly, Mr. Manerbino and CNW's Count I is **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should not attach to

a dismissal when the plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

**C.     Civil Theft Claim**

Mr. Manerbino and CNW also claim that Mr. Neuman and Mr. Conner's actions constitute civil theft of property as defined in Colo. Rev. Stat. § 18–4–401.  *Third-Party Compl.* [#50] at 31 ¶ 31.  Mr. Neuman and Mr. Conner argue that Mr. Manerbino and CNW have failed to adequately allege a claim under Colo. Rev. Stat. § 18–4–401 because Mr. Manerbino and CNW fail to sufficiently allege that they took property "without authorization." *Motion* [#59] at 8.

Pursuant to Colorado's Civil Theft Statute, "a person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception . . . and intends to deprive the other person permanently of the use or benefit of the thing of value . . . ."  Colo. Rev. Stat. § 18–4–401(1)(a).  To prevail on a civil theft claim, "the plaintiff must establish that (1) defendant knowingly obtained control over his property without authorization, and (2) defendant did so with the specific intent to permanently deprive him of the benefit of the property." *Welch v. Saunders*, 720 F. App'x 476, 480 (10th Cir. 2017) (dismissing civil theft claim because the complaint failed to allege facts that would support the conclusion that the defendant intended to permanently deprive the plaintiffs of their property) (citing *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009)).

Mr. Neuman and Mr. Conner assert that the taking of property "without authorization" is a requisite element of theft.  *Motion* [#59] at 8.  Further, Mr. Neuman and Mr. Conner argue that since Mr. Manerbino and CNW "voluntarily transferred control of CNW's

-11-

'business and operations and finances' to [Mr. Neuman and Mr. Conner] . . . the required element of 'without authorization' is lacking and [Mr.] Manerbino [and CNW's] cause of action for civil theft fails as a matter of law."[6] *Id.*

Mr. Manerbino and CNW allege that Mr. Neuman and Mr. Conner controlled CNW's business operations, but had "no legal right to appropriate the revenues and/or product of CNW for themselves." *Id.* at 30-31 ¶¶ 27-28. In other words, Mr. Neuman and Mr. Conner were *not authorized* to take the revenues and/or product of CNW. Although Mr. Neuman and Mr. Conner were originally authorized to control the business operations and finances, "theft can occur even though initial control of the property has been authorized; the intent to deprive, or knowing use inconsistent with the owner's benefit, may arise at a later time when control is no longer authorized. At that time, the requisite elements of theft exist." *People v. Treat*, 569 P.2d 473 (Colo. 1977) (citing *Poe v. People*, 428 P.2d 77 (Colo. 1967)). "Control need not be unauthorized from the outset." *Id.* (citations omitted).

Mr. Manerbino and CNW allege that when they demanded that Mr. Neuman and Mr. Conner "return the misappropriated revenues and/or product to CNW, they refused to do so." *Third-Party Compl.* [#50] at 30 ¶ 29. The alleged refusal to return the property supports the inference that Mr. Neuman and Mr. Conner intended to permanently deprive Mr. Manerbino and CNW of their property. *Huffman v. Westmoreland*, 205 P.3d 501, 509 (Colo. App. 2009) (stating that "the intent permanently to deprive the owner of the use or

---

[6] Mr. Neuman and Mr. Conner separately argue that, "to the extent [Mr.] Manerbino [and CNW] intend to allege that the property was obtained through 'deception,' the civil theft claim fails for the same reasons that the fraud claim fails, failure to comply with Rule 9(b)'s heightened pleading requirements . . . ." *Motion* [#59] at 8. Because Mr. Manerbino and CNW do not assert that Mr. Neuman and Mr. Conner obtained the disputed property through deception, the Court need not address the application of Rule 9(b) to the civil theft claim.

benefit of a thing of value may be inferred from the defendant's conduct and the circumstances of the case, but requires proof of a knowing use by the defendant inconsistent with the owner's permanent use and benefit") (citing *People v. Sharp*, 104 P.3d 252. 256 (Colo. App. 2004)). Mr. Manerbino and CNW's allegation supports an inference that Mr. Neuman and Mr. Conner knowingly used property inconsistent with the owners' permanent use and benefit.

Therefore, the Court finds that Mr. Manerbino and CNW state a claim upon which relief may be granted because they sufficiently allege the elements of civil theft. Accordingly, the Motion [#59] is **denied** with respect to Mr. Manerbino and CNW's Count II.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#59] is **GRANTED in part and DENIED in part**. The Motion is **denied** with respect to Count II alleging civil theft. The Motion is **granted** with respect to Count I alleging fraud. Mr. Manerbino and CNW's Count I asserting fraudulent inducement of a contract is **DISMISSED without prejudice**.

Dated: September 27, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge